1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY TIM HERRICK, | Case No. 1:20-cv-01776-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 18, 19, 20) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Jeffrey Tim Herrick ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]  Plaintiff submits that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony.  For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 9, 10.)

## II.

## BACKGROUND

### A.      Procedural History

On September 10, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a period of disability beginning on October 16, 2016.  (AR 229-232, 233-236.)  Plaintiff's application was initially denied on February 7, 2018, and denied upon reconsideration on May 1, 2018.  (AR 93-97, 99-103.)  Plaintiff requested and received a hearing before Administrative Law Judge Kathleen Laub ("the ALJ").  Plaintiff appeared for a hearing on April 28, 2020.  (AR 37-57.)  On May 29, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 16-30.)  The Appeals Council denied Plaintiff's request for review on October 13, 2020.  (AR 1-6.)

On December 17, 2020, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On May 28, 2021, Defendant filed the administrative record ("AR") in this action.  (ECF No. 11-1.) On October 15, 2021, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 18.) On November 15, 2021, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 19.)  On November 30, 2021, Plaintiff filed a reply brief.  (Pl.'s Reply ("Reply"), ECF No. 20.)

### B.      The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, May 29, 2020:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021.

- Plaintiff has not engaged in substantial gainful activity since October 16, 2016, the alleged onset date.

- Plaintiff has the following severe impairments: obesity, non-epileptic seizures, mild unspecified neurocognitive disorder, unspecified depressive disorder, and unspecified learning disorder.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes or scaffolds, but he can occasionally climb ramps or stairs and balance. The claimant can frequently stoop, kneel, crouch, and crawl. He can tolerate no exposure to cleaning products as they are being used. The claimant can tolerate no exposure to extreme heat, flashing lights, or hazards, such as unprotected heights and heavy mechanical machinery (like a jackhammer or tractor). The claimant can tolerate moderate noise, such as that of a business office, department store, grocery store, or light traffic. The claimant can perform work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time of up to thirty days and has a reasoning level of no higher than two. The claimant can sustain ordinary routines, and can understand, carry out, and remember simple instructions and use judgment in making simple work-related decisions. The claimant can attend and concentrate for two-hour periods totaling a normal eight-hour workday with usual work breaks, and he can respond appropriately to supervision, coworkers, and usual work situations. The claimant can deal with changes in a routine work setting and perform low stress work, which is defined as work requiring at most occasional decisions and occasional changes in work duties and tasks.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on July 22, 1975 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

- Considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

1  • Plaintiff has not been under a disability, as defined in the Social Security Act, from

2     October 16, 2016, through the date of this decision [May 29, 2020].

3  (AR 18-30.)

4                                        **III.**

5                               **LEGAL STANDARD**

6        To qualify for disability insurance benefits under the Social Security Act, the claimant

7  must show that she is unable "to engage in any substantial gainful activity by reason of any

8  medically determinable physical or mental impairment which can be expected to result in death

9  or which has lasted or can be expected to last for a continuous period of not less than 12

10 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step

11 sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. §

12 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th

13 Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is

14 disabled are:

15       Step one: Is the claimant presently engaged in substantial gainful activity? If so,
         the claimant is not disabled. If not, proceed to step two.
16

17       Step two: Is the claimant's alleged impairment sufficiently severe to limit his or
         her ability to work? If so, proceed to step three. If not, the claimant is not
18       disabled.

19       Step three: Does the claimant's impairment, or combination of impairments, meet
         or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the
20       claimant is disabled. If not, proceed to step four.

21       Step four: Does the claimant possess the residual functional capacity ("RFC") to
         perform his or her past relevant work? If so, the claimant is not disabled. If not,
22       proceed to step five.

23       Step five: Does the claimant's RFC, when considered with the claimant's age,
         education, and work experience, allow him or her to adjust to other work that
24       exists in significant numbers in the national economy? If so, the claimant is not
         disabled. If not, the claimant is disabled.

25 Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

26 ─────────────────────

27 [2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R.
   §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq.  The
   regulations are generally the same for both types of benefits.  Therefore, further references are to the disability
28 insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff raises one primary challenge in this appeal: that the ALJ erred by failing to provide clear and convincing reasons to disregard Plaintiff's symptom testimony.

**A.      The Clear and Convincing Standard for Weighing Credibility[3]**

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation

---

[3]  Although Defendant emphasizes disagreement with the standard in order to preserve the issue for future appeals, Defendant acknowledges the clear and convincing standard is the applicable standard for weighing credibility in the Ninth Circuit.  (Opp'n 8-9 n.4.)

and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

/ / /

**B.      The Relevant Aspects of the ALJ's Opinion**

The ALJ's primary summary of Plaintiff's symptom testimony is as follows, and includes some comparisons between the alleged symptoms/limitations and reported daily activities:

> The claimant alleges disability as a result of restless leg syndrome, obstructive sleep apnea, obesity, non-epileptic seizures, mild unspecified neurocognitive disorder, unspecified depressive disorder, and unspecified learning disorder.  The claimant alleges he experiences pain, fatigue, and seizures, and he cannot drive or work (Exs. 5E and 6E).  The claimant reported weekly seizures, and he indicated that it took him three to four hours to resume normal activities after experiencing a seizure (Ex. 5E).   The claimant also alleges he can pay attention for ten to fifteen minutes at a time, and he can walk for fifteen minutes before needing to stop and rest (Ex. 6E).  Additionally, the claimant alleges he has difficulty lifting, squatting, bending, standing, reaching, kneeling, talking, hearing, climbing stairs, using his hands, remembering, completing tasks, concentrating, understanding, and following instructions (Ex. 6E).  Despite these allegations, the claimant attends to his personal hygiene and prepares simple meals (Ex. 6E).  The claimant also makes beds, washes laundry, and washes dishes (Ex. 6E).  Additionally, the claimant spends time with family, travels by walking, and pays bills (Ex. 6E) . . .
>
> . . . At the hearing, the claimant reported still experiencing two to three seizures per month, and he indicated that his medications helped reduce frequency but caused drowsiness, so he took them at night (hearing testimony).  The claimant indicated that his seizure triggers included heat, strong odors, loud noises, music, and flashing lights (hearing testimony).  The claimant also reported that he had spoken to a counselor, but there was no neuropsychologist near him and a regular counselor was unable to further assist him (hearing testimony).  Additionally, the claimant reported helping his children get ready for school, and helping around the house by washing laundry and dishes (hearing testimony).  The claimant indicated that he performed no lawn work, but acknowledged he had helped his father-in-law pull and carry out carpeting (Ex. 16F/9, hearing testimony).  He denied taking his children to school, gaming or drawing.  The claimant reported going to Costco with his wife and father and listening to audiobooks at a low volume (Ex. 22F, hearing testimony).  Additionally, he admitted to watching television programs that did not have loud noise or flashing lights.  The claimant reported that he has no depression but following a seizure he is disoriented and tired with body pain (hearing testimony).  The claimant reported using a CPAP on a nightly basis (hearing testimony).  Additionally, the claimant reported residual fatigue the day after an episode and needing breaks after thirty to sixty minutes (hearing testimony).  The claimant indicated that he could listen to audiobook for thirty minutes, but contended he gets headaches if he overexerts himself (hearing testimony).

(AR 22-23.)

The ALJ's opinion contains a common statement utilized in disability determinations, finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 23.)  The ALJ then provided the first more specific basis for discounting the symptom testimony, stating the objective medical findings failed to provide strong support for the allegations, and did not support greater limitations than the RFC.  (AR 23.)  The ALJ then summarized various records and reports.  The ALJ first summarized the events surrounding Plaintiff's first episode of seizures that occurred in October of 2016, through December of 2016, as follows:

> In October of 2016, the claimant presented Saint Agnes Medical Center, with reports of a syncopal episode with an associated headache (Ex. 1F/37). It was noted that the episode occurred at a softball field, and the claimant's eyes rolled back during three, thirty-second episodes (Ex. 1F/37). At the hospital, the claimant was alert and oriented with no neurologic deficit (Ex. 1F/38). The claimant's strength and range of motion were normal, and his cranial nerves were intact (Ex. 1F/38). He reported that it took him one week to recover from his first seizure. He sustained a second seizure on October 28, which he reported took less time from which to recover.
>
> In November of 2016, at Sansum Clinic, the claimant denied having ambulation difficulties (Ex. 18F/3). The claimant weighed 297 pounds at this time, and he had a BMI of 39.18 (Ex. 18F/3). The claimant's strength was five out of five and his reflexes were plus two (Ex. 18F/4). The claimant denied mood changes or irritability, and it was noted that he had no depression (Ex. 18F/3). An EEG showed left frontal sharp and slow wave discharge (Ex. 18F/9). In December of 2016, an MRI of the claimant's brain was described as unremarkable, and no definite seizure focus was identified (Exs. 4F/28 and 18F/9). While he sustained a seizure that month, it was noted he was on a sub-therapeutic dose of medication.

(AR 23-24.)  The ALJ then summarized records related to some reports of physical activities, and other activities that were reported to be related to triggering events for the seizures:

> In June of 2017, the claimant reported he was mowing his lawn and doing a lot of the housework; however, he noted feeling the need for a nap after completing lawn care (Ex. 18F/9). In August of 2017, it was reported that the claimant experienced a seizure while hammering a fence, and he experienced additional seizures while at a mall, Costco and church, which he believed were related to music playing in those locations (Ex. 18F/12). In October of

2017, the claimant complained of fatigue and dyspnea upon exertion, and he reported that he took naps after walking his dog (Exs. 3F/2 and 14F/2). The claimant weighed 312 pound at this time, and he had a BMI of 41.16 (Exs. 3F/3 and 14F/3). In this same month, the claimant reported not driving due to his seizure disorder (Ex. 2F/2). The claimant's thought processes and speech were normal, and his memory was intact (Ex. 2F/2 and 3). The claimant was alert and in no distress, and he had full range of motion (Ex. 2F/2 and 3). Also in this same month, while at Community Regional Medical Center, the claimant was negative for dizziness, tremors, syncope, facial asymmetry, speech difficulty, weakness, light-headedness, numbness, and headache (Exs. 13F/3 and 17F/2). The claimant was oriented, and he had no cranial nerve or sensory deficit (Ex. 13F/3 and 4 and 17F/2 and 3). The claimant's coordination and gait were described as normal, and his reflexes were plus two (Exs. 13F/4 and 17F/3). The claimant's Glasgow Coma Scale (GCS) eye score was four, his GCS verbal score was five, and his GCS motor score was six (Exs. 13F/4 and 17F/3). The claimant's mood and affect were normal, and his speech was not slowed (Exs. 13F/4 and 17F/3). Additionally in this same month, the claimant reported that despite being very sensitive to sounds he was able to go to church without much difficulty despite the music. He also indicated that he was walking his children to school and walking more in general (Ex. 18F/16).

(AR 24.)   The ALJ noted that in November of 2017, while at Stanford Hospital, Plaintiff reported experiencing no seizure-related injuries; denied experiencing any seizures in October of 2017; reported experiencing three seizures in September of 2017, which were not all triggered; was able to spell "world" backward and recall recent meals; had a fund of knowledge that was described as good; had thought processes described as intact; had language intact for speech fluency, naming, repetition, comprehension, reading, and writing; and had a flat affect; had intact strength, coordination, and normal gait.  (AR 24.)

The ALJ noted a December 2017 mental status consultative exam with Dr. Lance Portnoff, who assessed Plaintiff as having mild unspecified neurocognitive disorder, an unspecified learning disorder, and unspecified depressive disorder with anxious feature.  (AR 24-25.)[4]

_____

[4]  The ALJ summarized the exam as follows:

In December of 2017, Lance Portnoff, Ph.D., a consultative examiner, administered a mental status examination (Ex. 10F). It was noted the claimant was an adequate historian, and he reported depression due to health issues without vegetative state or suicidal ideation (Ex. 10F/2). The claimant denied having a history of hallucinations, mania, and psychiatric hospitalizations (Ex. 10F/2). The claimant reported being able to manage money, attend to his personal hygiene, and

1    The ALJ summarized the records from January 2018 from Stanford Hospital, as well as

2    reports spanning the time period of May 2018 through July 2018, then a record from October of

3    2019, as follows:

> In January of 2018, while at Stanford Hospital, a continuous video
> EEG had normal results, and it was noted an MRI showed a very
> subtle questionable signal change in the right hippocampus (Exs.
> 11F/32 and 12F/12 and 14). In May of 2018, the claimant's wife
> reported that the claimant's mood could fluctuate from day-to-day,
> and his moods included sadness and anger (Ex. 19F/13). In June of
> 2018, the claimant's strength was five out of five, and his sensation
> and coordination were intact (Ex. 19F/73). The claimant
> appropriately followed commands and his expressive language was
> fluent (Ex. 19F/73). The claimant reported personality changes
> following seizures (Ex. 22F/13). The claimant also reported
> enjoying audiobooks, drawing, and gaming (Ex. 22F/32). It was
> noted that the recorded events were not epileptic in nature although
> the claimant had reduced responsiveness throughout the event and
> had amnesia of the event (Ex. 22F/39). This is consistent with a
> non-epileptic event, as the EEG showed no evidence of
> epileptiform activity or ictal pattern (Ex. 22F/39).
>
> In July of 2018, the claimant reported he was not feeling depressed
> and his anxiety was better (Ex. 16F/9). The claimant reported
> upper back pain after pulling out carpet in his home for two hours
> (Ex. 16F/9). The claimant's mood and affect were appropriate and
> his thought processes were normal (Ex. 16F/10). The claimant was
> alert and oriented, and he had full range of motion (Ex. 16F/10).
> The claimant reported being on a low carbohydrate diet and
> exercising (Ex. 16F/10). In October of 2019, the claimant reported

---

prepare food, and he admitted to performing light household chores (Ex. 10F/3). The claimant was
casually dressed and groomed with mild psychomotor slowing (Ex. 10F/4). The claimant's eye
contact was fair, and his speech was quiet and lacked spontaneity (Ex. 10F/4).

The claimant was positive for moderate tense depression (Ex. 10F/4). The claimant was able to
count backward and perform simple calculations, and he was able to name similarities and
differences between groups of items (Ex. 10F/4). The claimant was also able to repeat five digits
forward and four in reverse (Ex. 10F/6). The claimant's thought processes were coherent but
mildly concrete/impoverished, and his thought content was appropriate to situation (Ex. 10F/4).
On the Wechsler Adult Intelligence Scale, IV, the claimant obtained the following composite
scores: verbal-78, perceptual reasoning-81, working memory-92, processing speed-100, and full
scale IQ-82 (Ex. 10F/5). The claimant was oriented, and he recalled three out of three words
immediately and after a delay (Ex. 10F/4). The claimant was also able to recall biographical
information, and to name the capital of California and the President of the United States (Ex.
10F/4). On the Wechsler Memory Scale IV, the claimant obtained the following index scores:
auditory memory-57, visual memory-76, immediate memory-69, and delayed memory 60 (Ex.
10F/6 and 7). These scores indicated marginal to mild impairments (Ex. 10F/7). The claimant's
judgment and insight were described as adequate (Ex. 10F/5). The claimant was assessed with
mild unspecified neurocognitive disorder, unspecified learning disorder, and unspecified
depressive disorder with anxious feature (Ex. 10F/7).

(AR 24-25.)

having no seizures while on his current medication regimen of gabapentin, sertraline, and pramipexole (Ex. 21F/10).

(AR 25.)

The ALJ then summarized records from the year 2020, noting: in February of 2020, Plaintiff reported seizure symptoms with exercise; in March of 2020, Plaintiff reported planning to walk more and start weight watchers; that Plaintiff reported experiencing seizure symptoms a week prior to this examination; in April of 2020, Plaintiff had a BMI of 45.35, and reported attempting diet, exercise, and that he no longer was consuming soda; and that Plaintiff was scheduled to undergo weight loss surgery in November of 2020.  (AR 25.)

Finally, the ALJ then again summarized what they viewed as the most significant evidence as to the RFC determination, and why the symptom testimony was discredited:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. The claimant's statements about the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the objective medical evidence and the other evidence of record. The claimant does experience some limitations but only to the extent described in the residual functional capacity above. The record indicated the claimant experienced his first seizure in October of 2016, and it took him a week to recover. The claimant's second seizure occurred at the end of October of 2016, and it took him less time to recover. In December of 2016, the claimant experienced another seizure while taking a sub- therapeutic medication dosage. MRI results were within normal limits, and EEG results were only mildly abnormal. In June of 2017, the claimant reported a seizure while using a computer, and he reported headaches before and memory issues after the seizure. At this time, the claimant was still mowing his lawn, although he complained of fatigue afterward. In July of 2017, it was noted the claimant worked on a fence using a hammer, shopped at a mall and Costco, and attended church. In October of 2017, it was noted the claimant walked his children to school, attended church without difficulty, and was a stay-at-home dad. Cardiac testing results were within normal limits. In December of 2017, consultative examination notes indicated some mild slowing and mild memory impairment (Ex. 10F). In January of 2018, it was noted the claimant experienced a seizure was he while was at a hospital, and he was tired for several hours after. Neurologic testing revealed no significant findings. In July of 2018, the claimant indicated his anxiety had improved and he denied depression. The claimant's restless leg syndrome and gastroesophageal reflux disease were described as controlled. The claimant reported his back was sore after pulling out carpet for two hours at home (Ex. 16F/9). In January of 2018, it was noted the claimant's severe obstructive

sleep apnea had a good response to CPAP. In June of 2019, the claimant had an extended stay in hospital to capture events, which revealed non- epileptic activity. The record indicated the claimant was scheduled for weight loss surgery in April of 2020 and his CPAP was significantly beneficial. The claimant reported experiencing seizures while exercising. While taking gabapentin, sertraline and pramipexole, the claimant was reported as stable and not having an episode while taking these medications (Ex. 21F/10). The evidence of record reflects the claimant is able to engage in a wide range of activities of daily living and is stable on medication.

(AR 27-28.)

### C.   The Court finds the ALJ Failed to Provide Clear and Convincing Reasons to Discount Plaintiff's Symptom Testimony

Plaintiff generally argues the ALJ failed to "specifically identify the testimony [found] not to be credible and [failed to] explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); see also Brown-Hunter v. Colvin, 806 F.3d 487, 493–94 (9th Cir. 2015) ("Our review of the ALJ's written decision reveals that she did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."). Plaintiff submits the ALJ merely provided a partial summary of the record in support of her evaluation, which is not sufficient under the clear and convincing standard. The Court turns to consideration of the parties' specific arguments.

#### 1.   Inconsistency with the Medical Record

Before speaking to the specific reasons of daily activities and stability on medication, Defendant first submits the ALJ properly summarized Plaintiff's symptom allegations. (AR 22-23). Defendant proffers this consideration of the specific allegations satisfied the ALJ's initial burden described in Lambert. See Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020) ("This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony.") (internal quotation marks and citation omitted). Defendant argues the ALJ properly found Plaintiff's testimony to be inconsistent with the objective evidence and clinical findings in the record. (AR 23.)

Contradictory testimony can be a sufficient basis for rejecting testimony. See Carmickle

12

v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)); Hamm v. Saul, 804 F. App'x 810, 811–12 (9th Cir. 2020) ("Hamm's testimony was inconsistent with, and unsupported by, the medical evidence of record") (citing Carmickle, 533 F.3d at 1161; Burch, 400 F.3d at 681).

Here, the ALJ made the general statements that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations," and that "[s]pecifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity." (AR 23.) The ALJ made these statements, before generally summarizing, as Plaintiff highlights, only a portion of the medical history. Based on a review of the ALJ's opinion as a whole, including the ALJ's final paragraph in the RFC section that reemphasizes some of the summary and certain of Plaintiff's activities (AR 27-28), the Court finds the ALJ did not sufficiently connect specific aspects of the objective medical evidence that the ALJ found to be inconsistent with Plaintiff's testimony, nor specifically contradictory to the subjective testimony. (AR 23.) As explained by the Ninth Circuit in Lambert, relied on by Defendant, an ALJ may not rely on general summaries of evidence without sufficient explanation and connection to the discounted aspects of testimony, to satisfy the clear and convincing standard:

> But this "boilerplate statement" by way of "introductory remark," which is "routinely include[d]" in ALJ decisions denying benefits, did not "identify what parts of the claimant's testimony were not credible and why." *Treichler*, 775 F.3d at 1103.
>
> As noted above, the ALJ also provided four high-level reasons as to why Lambert's allegations were "less than fully consistent with the evidence." But this brief discussion was likewise insufficient. "We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Lambert's] pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Brown-Hunter*, 806 F.3d at 494. Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when

denying benefits. *See Treichler*, 775 F.3d at 1103 ("[T]he ALJ's analysis need not be extensive."). But our precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that Lambert's testimony was inconsistent with her medical treatment. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that we may not "take a general finding—an unspecified conflict between [c]laimant's testimony ... and her reports to doctors—and comb the administrative record to find specific conflicts"); *see also, e.g.*, *Brown-Hunter*, 806 F.3d at 493–94; *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009). Although the ALJ did provide a relatively detailed overview of Lambert's medical history, "providing a summary of medical evidence ... is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible."

Lambert, 980 F.3d at 1277–78.

The Court finds the ALJ's statements and summary of the Plaintiff's medical history and testimony did not sufficiently connect specific aspects of the testimony and records for the Court to conclude the ALJ's finding of inconsistency with the record is a clear and convincing reason supported by substantial evidence in the record.  See id.; Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) ("[T]he ALJ must give specific, clear, and convincing reasons for rejecting the testimony by identifying *which* testimony [the ALJ] found not credible and explaining *which* evidence contradicted that testimony . . . This boilerplate language does neither.") (internal quotation marks and citations omitted) (emphasis and alterations in original); Argueta v. Colvin, No. 1:15-CV-01110-SKO, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016) ("Under Brown-Hunter, the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility . . . the ALJ must link the medical evidence at issue to the Plaintiff's testimony.") (internal citation omitted); Brown-Hunter, 806 F.3d at 493–94 ("We disagree with the district court that the ALJ 'identified several inconsistencies between [Brown–Hunter's] testimony and the record,' and therefore "gave clear and convincing reasons to support" her non-credibility determination.  Our review of the ALJ's written decision reveals that she did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination.").  Accordingly, the ALJ's rejection of Plaintiff's testimony for being inconsistent with the medical record was not a clear and

1    convincing reason supported by substantial evidence in the record.

2        2.    <u>Daily Activities</u>

3        The ALJ may consider the claimant's daily activities in making a credibility

4    determination.  <u>See</u> <u>Diedrich v. Berryhill</u>, 874 F.3d 634, 642-43 (9th Cir. 2017); <u>Thomas</u>, 278

5    F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3)(i) ("Because symptoms sometimes suggest a greater

6    severity of impairment than can be shown by objective medical evidence alone, we will carefully

7    consider any other information you may submit about your symptoms . . . Factors relevant to

8    your symptoms, such as pain, which we will consider include: (i) Your daily activities.").

9    However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." <u>Vertigan v.</u>

10   <u>Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.

11   1989)).  In fact, "many home activities are not easily transferable to what may be the more

12   grueling environment of the workplace."  <u>Fair</u>, 885 F.2d at 603.  Only if a claimant's level of

13   activities is inconsistent with her claimed limitations would activities of daily living have any

14   bearing on the claimant's credibility.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).

15       There are two ways an ALJ may use daily activities for an adverse credibility finding.

16   <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007).  First, daily activities can form the basis of an

17   adverse credibility determination if the claimant's activity contradicts the claimant's testimony.

18   <u>Id.</u>  Second, "daily activities may be grounds for an adverse credibility finding 'if a claimant is

19   able to spend a substantial part of his day engaged in pursuits involving the performance of

20   physical functions that are transferable to a work setting.' "  <u>Id.</u> (quoting <u>Fair v. Bowen</u>, 885 F.2d

21   597, 603 (9th Cir. 1989)).  The ALJ must make specific findings as to the daily activities and

22   their transferability to conclude that the claimant's daily activities warrant an adverse credibility

23   determination.  <u>Orn</u>, 495 F.3d at 639.

24       Plaintiff acknowledges the ALJ did reference what the ALJ described as "a wide range of

25   activities of daily living" performed by Plaintiff, including: that he reported "mowing his lawn,

26   although he complained of fatigue afterward" in June 2017; that he reported working on a fence,

27   going to the mall, church, and Costco in July 2017; that he reported walking his children to

28   school and attending church in October 2017; and experienced a seizure while using a computer

1   and attempting to exercise.  However, Plaintiff argues the ALJ did not meet the requirements for

2   use of daily activities, specifically where either: (1) the daily activities contradict the claimant's

3   other testimony; or where (2) a claimant is able to spend  a substantial part of his day engaged in

4   pursuits involving the performance of physical functions  that are transferable to a work setting.

5   Plaintiff emphasizes the ALJ did not assert that Plaintiff's activities contradict his other

6   testimony, and to the extent the Commissioner contends the ALJ found such activities to be

7   somehow inconsistent with disability generally, the reasoning is faulty as the ALJ failed to make

8   the requisite findings for such determination.   Orn, 495 F.3d at 639 ("Here, there is neither

9   evidence to support that Orn's activities were 'transferable' to a work setting nor proof that Orn

10  spent a 'substantial' part of his day engaged in transferable skills.").

11       Plaintiff additionally contends the ALJ failed to identify "*which* daily activities conflicted

12  with *which* part of" of Plaintiff's testimony.   Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir.

13  2014) (emphasis in original).   In this regard, Plaintiff highlights the ALJ did not explain how

14  going to the mall, church, and Costco in July 2017 – each of which in fact were noted in the

15  record because they triggered seizures for Mr. Herrick – was inconsistent with Plaintiff's

16  disability claim.   Plaintiff notes the ALJ did not make findings, for example, as to how often

17  Plaintiff was able to walk his children to school or attend church in October 2017, nor any

18  findings as to the duration of such activities and how they transfer to a work setting.   Similarly,

19  Plaintiff argues the ALJ's reference to the isolated events of mowing the lawn on one occasion in

20  June 2017, and working on a fence in July 2017, is insufficient to support a finding that Plaintiff

21  could spend a substantial part of his day engaged in such activities.

22       Defendant contends the ALJ properly noted Plaintiff engaged in activities inconsistent

23  with total disability, including: a report that Plaintiff mowed the lawn and did housework (AR

24  768)[5]; that in late 2017, Plaintiff reported that despite being very sensitive to sounds he was able

25  to go to church without much difficulty, walked his children to school, and walked more in

---

26  [5]  This record dated June 6, 2017, reported that Plaintiff last had seizures on June 4, 2017, late May 2017, and

27  January 2017.  (AR 768.)  The record notes Plaintiff had 3 seizures in the past 2 weeks.  (Id.)  The record notes
    "Also feeling more fatigued, even prior to seizures.  After mowing the lawn, becomes more exhausted and requires a

28  nap . . . Still doing a lot of the housework."  (Id.)

general (AR 775)[6]; that Plaintiff reported enjoying audiobooks, drawing, and gaming (AR 945)[7]; that in 2018, Plaintiff reported pulling out carpet in his home (AR 734)[8]; that Plaintiff reported being on a low carbohydrate diet and exercising (AR 736)[9]; that Plaintiff helped with his children, and performed household chores (AR 329)[10]; and that he was capable of managing money (AR 331).[11]   (Opp'n 10.)  Based on these reports, Defendant contends that "[a]lthough these activities are not direct evidence that Plaintiff could perform substantial gainful activity, they are evidence that Plaintiff was less limited than he claimed."  (Opp'n 10, citing <u>Molina</u>, 674 F.3d at 1112 ("the ALJ may consider . . . whether the claimant engages in daily activities inconsistent with the alleged symptoms.") (internal quotation marks and citation omitted).)

Based on the Court's review of the ALJ's opinion, the record as a whole as relied on by the ALJ, and the parties' arguments, the Court does not find the ALJ's citations to activities of daily living to be sufficiently connected to specific aspects of the Plaintiff's symptom testimony, to satisfy the clear and convincing standard.  Here, given the isolated nature of these reports of activities that were cited by the ALJ, the limited amount of activity that the reported activities entailed, particularly given some of the activities were in fact reported in relation to their seizure triggering aspects, the Court concludes the ALJ never actually linked the medical evidence by

---

[6]  On October 31, 2017, Plaintiff reported "He is still very sensitive to sounds – causes HA's and in the past seizures (sound from church music).  Now can go to church without too much difficulty . . . Reiterates that typical seizures are now triggered by sounds . . . Noxious sounds, then HA . . . Walks the kids to school, walking more.  Stay at home dad for right now.  He is planning to apply for permanent disability."  (AR 775.)

[7]  The June 6, 2018 record noted that Plaintiff "reports that while he normally enjoys audio books, drawing, gaming, he has found he has been less attentive to these things and will quickly lose interest."  (AR 945.)

[8]  The July 17, 2018 treatment record notes that Plaintiff reported "C/O upper back pain x 2 wks after pulling carpet out at home x 2 hrs.  Has back pain since then."  AR 734.)

[9]  In the July 17, 2018 treatment notes, under prediabetes, it is noted: "low carb diet and cont being active/exercises."  (AR 735.)

[10]  The Social Security Administration form asks what Plaintiff does from the time he wakes up until going to bed, and Plaintiff reported: "I help my wife with my children, do small chores like dishes and laundry and take frequent naps."  (AR 329.)  In response to the next question, Plaintiff writes: "I help my wife with our children but am never alone with them due to seizures."  (<u>Id.</u>)  Where asked what he was able to do before his illness or condition that he can't do now, Plaintiff wrote: "Work, take care of my kids, yard house, go out in public to loud places."  (<u>Id.</u>)

[11]  Plaintiff checked the box stating an ability to pay bills, count change, handle a savings account and use a checkbook.  (AR 331.)

1   identifying which daily activities conflicted with which part of the testimony.  Burrell, 775 F.3d

2   at 1138 (9th Cir. 2014) ("[T]he ALJ did not elaborate on *which* daily activities conflicted

3   with *which* part of Claimant's testimony.") (emphasis in original); Argueta, 2016 WL 4138577,

4   at *13 (same).  The ALJ's use of activities of daily living in her credibility analysis did not

5   satisfy either of the permissible grounds for doing so.  Orn, 495 F.3d at 639 ("This court has

6   repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does

7   not in any way detract from her credibility as to her overall disability . . . . Neither of the two

8   grounds for using daily activities to form the basis of an adverse credibility determination are

9   present . . .  activities do not contradict his other testimony . . . [and] activities do not meet the

10  threshold for transferable work skills.") (quoting Vertigan, 260 F.3d at 1050) (citing Fair, 885

11  F.2d at 603) (internal quotation marks omitted).

12      Accordingly, the Court finds the ALJ's use of activities of daily living was not a clear

13  and convincing reason for discounting the Plaintiff's symptom and limitation testimony.

14          3.      The ALJ's Reliance on Report of Stability on Medication

15      The ALJ noted in the summary portion of the RFC section that "[i]n October of 2019, the

16  claimant reported having no seizures while on his current medication regimen of gabapentin,

17  sertraline, and pramipexole," and at a later point in the opinion, again referenced the record

18  stating that "[w]hile taking gabapentin, sertraline and pramipexole, the claimant was reported as

19  stable and not having an episode while taking these medications."  (AR 25, 28, citing AR 912.)

20  Plaintiff contends the ALJ's reference to this record is not a sufficient basis to reject his

21  testimony, when viewed in the context of similar records and the longitudinal record as a whole.

22      Plaintiff concedes that "[i]mpairments that can be controlled effectively with medication

23  are not disabling for the purpose of determining eligibility for SSI benefits."  Warre v. Comm'r

24  of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  However, Plaintiff argues that

25  *stability* should not be equated with *functionality*.  See Holohan, 246 F.3d at 1205 ("Dr. Oh's

26  statements must be read in context of the overall diagnostic picture he draws.  That a person who

27  suffers from severe panic attacks, anxiety, and depression makes some improvement does not

28  mean that the person's impairments no longer seriously affect her ability to function in a

workplace."); Lule v. Berryhill, No. 1:15-CV-01631 - JLT, 2017 WL 541096, at *7 (E.D. Cal. Feb. 10, 2017) ("Although Plaintiff's condition was 'stable' and not worsening, there is no indication the record that the stability of her condition rendered her able to perform work for an eight-hour day."). In this regard, Plaintiff highlights that significantly, the ALJ failed to discuss the record of Plaintiff's *next office visit* on February 7, 2020, in which it was noted Plaintiff experiences seizures *two to four times per month*. (AR 910.) This same record also states that prior to Plaintiff's current medication regime he experienced seizures three or four times per week. Therefore, Plaintiff argues that while the frequency of his seizures had reduced, the impact on his functionality remained significant, given the vocational expert opined that work would be eliminated with absences of two to three days per month. (AR 55-56.) Plaintiff submits that whether the reference to "no episodes" was due to inadvertent error, or a misunderstanding of his description of his medical history and symptoms, is unknown. However, Plaintiff submits that for the ALJ's to rely on the October 29, 2019 record in isolation, without discussing the subsequent treatment note from the same medical facility that provides contradictory and significant information, is error.

Defendant responds that the ALJ properly noted evidence of effective treatment, including the ALJ's reliance on the October 29, 2019 record. Defendant proffers Plaintiff ignores the context of the October 29, 2019 treatment note itself, as while it is true the use of the term "stable" in a treatment note does not necessarily equate to improved functioning, in this case, it clearly does. (Opp'n 10.) This is because here, Plaintiff's seizures are his primary condition and the primary issue in this case is the limitations stemming from Plaintiff's seizures. Thus, given the report demonstrates that Plaintiff stated he experienced no seizures and had not done so for two years prior, the stability referred to in the notes and cited by the ALJ refers to a stable period of no or very few seizures. Because this stable period goes to the heart of the issues in this case, Defendant argues it is relevant to the ALJ's assessment of Plaintiff's subjective statements, and supports the ALJ's decision to find Plaintiff's statements not fully persuasive. (Opp'n 10.)

Turning to the record at issue, the October 29, 2019 record notes: "Psychogenic

nonepileptic seizure . . . Med regimen of gabapentin, sertraline, also pramipexole makes sx stable with no episodes while on them.  Dr Meador neurologist in Stanford sees pt yearly . . . No seizure meds were working.  What did help was Sertralene, pramipexole and gabapentin.  He has not had a seizure for 2 years.'  (AR 912.)  However, the same record also contains the following notation: "Last year july 1wk in hospital for seizure testing saw 12 minute seizure."  (AR 912.)  Thus, on its face, the record appears somewhat internally inconsistent.  Further, Plaintiff correctly highlights that the record associated with the next visit by Plaintiff with this provider, dated February 7, 2020, contains the following notation: "Psychogenic nonepileptic seizure 2-4 per month can[']t work or drive but used to be 3-4 per week until neurologist started gabapentin, sertraline."  (AR 910.)  The Court finds it significant that this later record is ignored or not addressed in the context of the previous record and the longitudinal record as a whole pertaining to the number of reported symptoms and the impact of the medication in reducing the number of monthly symptoms.  As Defendant notes, the issue of seizures *is* the primary issue underlying this disability claim, and therefore it is critical that the October 29, 2019 record is not utilized in isolation, particularly given the potentially internally inconsistent nature of the record, as well as the totality of the records preceding it, and the February 7, 2020 record that followed it from this medical facility.

Plaintiff argues the reduction in the number of seizures suffered by Plaintiff that is described in February 7, 2020 record does not conflict with Plaintiff's testimony, as Plaintiff testified at his administrative hearing in April 2020 that he was then experiencing non-epileptic seizures two to four times a month.  (AR 45-46.)  The Court agrees this testimony is consistent with the February 7, 2020 treatment note.  Further, while the number of seizures had been reduced through his medication regime, and potentially avoidance of possible seizure triggers, the Court agrees with Plaintiff that the record demonstrates that since Plaintiff's first seizure in October 2016, he underwent years of frequent seizures – with varying diagnoses, repeated diagnostic testing, and alternative medication regimes – within the relevant time period, (AR 444, 449, 455, 505-506, 517-521, 522-535, 560, 564, 587-607,632, 637-638, 643-665, 734-735, 760, 785-789, 793-794, 824, 829, 838-839, 841, 857, 864, 908, 910-911, 912), and thus it is

significant to the Court's review of the credibility analysis that the ALJ only cites the one record containing the notation of no episodes of seizures, but does not connect that treatment record to other records or the longitudinal record as a whole during the relevant period of alleged disability.

Therefore, the Court finds the ALJ's discounting of Plaintiff's testimony on the basis that his seizures are "stable on medication" impermissibly isolates evidence favorable to the ALJ's conclusion while not accounting for or addressing relevant and potentially conflicting evidence, and fails to adequately account for the longitudinal record.  While a notation proffering medication completely stopped seizures can provide a clear and convincing reason to discount testimony that contradicts such reporting by the Plaintiff, given the record as a whole, the context of that record, and the context of the immediately subsequent record with that same provider's containing a description of the medication's impact on reducing the number of seizures, this was not a clear and convincing reason.  See Garrison v. Colvin, 759 F.3d 995, 10171-1018 n.23 (9th Cir. 2014) ("Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms [and] must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace . . . although Scott had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia.  The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits.") (quoting Scott v. Astrue, 647 F.3d 734, 739–40 (7th Cir. 2011)); Diedrich, 874 F.3d at 642 ("It was improper for the ALJ to discount Diedrich's testimony by 'cherry pick[ing]' the absence of certain symptoms from this report."); Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]reatment records must be viewed in light of the overall diagnostic record . . . read as a whole, the treatment notes do not undermine Ghanim's testimony . . . [additionally,] the ALJ improperly cherry-picked some of Dr. Dees's characterizations of Ghanim's rapport and demeanor instead of considering these factors in the context of Dr. Dees's diagnoses and observations of impairment."); Hill, 698 F.3d at 1159 ("a reviewing court must consider the

1  entire record as a whole and may not affirm simply by isolating a specific quantum of supporting

2  evidence.") (quoting Robbins, 466 F.3d at 882); Lannon v. Comm'r of Soc. Sec. Admin., 234 F.

3  Supp. 3d 951, 960 (D. Ariz. 2017) (ALJ did not present clear and convincing reason where

4  "selectively picked" aspects and ignored others in entirety of record); Robert M. v. Saul, No. 20-

5  CV-03481-JSC, 2021 WL 2651363, at *6 (N.D. Cal. June 28, 2021) ("The ALJ's cherry-picked

6  single instance of Plaintiff's pain being under control is not a 'specific, clear and convincing'

7  reason to discount Plaintiff's pain testimony, given these other numerous instances where his

8  pain was not under control.").

9       Accordingly, the Court does not find the ALJ's citation to the October 29, 2019 record to

10 be a clear and convincing reason based on substantial evidence in the record to discount

11 Plaintiff's testimony concerning the frequency of his seizures.

12       **D.    The Court finds Remand is Appropriate**

13       The ordinary remand rule provides that when "the record before the agency does not

14 support the agency action, . . . the agency has not considered all relevant factors, or . . . the

15 reviewing court simply cannot evaluate the challenged agency action on the basis of the record

16 before it, the proper course, except in rare circumstances, is to remand to the agency for

17 additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

18 1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at

19 1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

20 decision by the Commissioner 'with or without remanding the cause for a rehearing.' "

21 Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)).  The decision to remand for benefits is

22 discretionary.  Treichler, 775 F.3d at 1100.  In Social Security cases, courts generally remand

23 with instructions to calculate and award benefits when it is clear from the record that the

24 claimant is entitled to benefits.  Garrison, 759 F.3d at 1019.  Even when the circumstances are

25 present to remand for benefits, "[t]he decision whether to remand a case for additional evidence

26 or simply to award benefits is in our discretion."  Treichler, 775 F.3d at 1102 (quoting Swenson

27 v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

28       The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

1   must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

2   award benefits: (1) the record has been fully developed and further administrative proceedings

3   would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

4   rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

5   discredited evidence were credited as true, the ALJ would be required to find the claimant

6   disabled on remand."  Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  The credit as true

7   doctrine allows "flexibility" which "is properly understood as requiring courts to remand for

8   further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an

9   evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.

10  Garrison, 759 F.3d at 1021.

11          The Court has determined the ALJ failed to provide clear and convincing reasons for the

12  discounted weight she accorded Plaintiff's symptom and limitation testimony.  As Plaintiff notes,

13  while Defendant argues in opposition that the "credit-as-true" rule should not be invoked here

14  (Opp'n 11-12), Plaintiff seeks the remedy of remand (Br. 32; Reply 7-8).  The Court finds that

15  based on the ALJ's opinion and review of the record, doubts remain as to whether Plaintiff is in

16  fact disabled.  The Court orders this action remanded for further administrative proceedings

17  consistent with this opinion, and to further develop the record as deemed necessary.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**V.**

2

**CONCLUSION AND ORDER**

3        Based on all of the foregoing reasons, the Court finds that the ALJ did not provide clear

4  and convincing reasons for discounting Plaintiff's symptom testimony.  See Moore v. Comm'r

5  of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("The clear and convincing standard is

6  the most demanding required in Social Security cases.").

7        Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

8  Commissioner of Social Security is GRANTED and this matter is remanded back to the

9  Commissioner of Social Security for further proceedings consistent with this order.  It is

10 FURTHER ORDERED that judgment be entered in favor of Plaintiff Jeffrey Tim Herrick and

11 against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to

12 CLOSE this action.

13

IT IS SO ORDERED.

14

15 Dated:   **May 31, 2022**

16                                                    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28